UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTHONY DANIEL WALKER,

                Petitioner,                    Case No. 1:17-cv-856

v.                                   Honorable Janet T. Neff

CARMEN PALMER,

                Respondent.
_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Anthony Daniel Walker is incarcerated with the Michigan Department of Corrections at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan.  After a jury trial in the Berrien County Circuit Court, Petitioner was convicted of the following:  two counts of armed robbery, Mich. Comp. Laws § 750.529; assault with intent to rob while armed, Mich. Comp. Laws § 750.89; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227(b). On May 19, 2014, the trial court sentenced Petitioner to prison terms of 35 to 100 years for each of the armed-robbery and assault convictions, 76 to 240 months for the felon-in-possession conviction, and a consecutive 2 years for the felony-firearm conviction.  (J. of Sentence, ECF No. 1-10.)

      Petitioner filed his habeas corpus petition on September 25, 2017, raising fourteen grounds for relief, as follows:

I.      THE GOVERNMENTAL FAILURE TO INVESTIGATE AND ANALYZE EVIDENCE DEPRIVE[D] [PETITIONER] OF DUE PROCESS AND A FAIR TRIAL[.]

II.     [PETITIONER IS] ENTITLED TO A NEW TRIAL WHERE TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE IN VIOLATION OF THE UNITED STATES AND MICHIGAN CONSTITUTIONS.

III.    [PETITIONER] IS ENTITLED TO A CROSBY REMAND FOR RESENTENCING UNDER LOCKRIDGE, AS THE COURT ENGAGED IN JUDICIAL FACTFINDING THAT INCREASED HIS SENTENCING RANGE IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS.

IV.     PETITIONER WAS DENIED HIS FUNDAMENTAL DUE PROCESS PROTECTIONS TO A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS WHEN THE TRIAL COURT EXCEEDED ITS STATUTORY AUTHORITY WHEN IT PRESIDED OVER THE PRELIMINARY EXAMINATION, BOUND OVER PETITIONER TO ITSELF IN THE CIRCUIT COURT, AND THEN PRESIDED OVER THE CRIMINAL PROCEEDING, THE RESULT OF WHICH IS A JURISDICTIONAL DEFECT, AND REQUIRING PETITIONER'S IMMEDIATE RELEASE FROM CUSTODY.

V.      PETITIONER WAS DENIED HIS FUNDAMENTAL DUE PROCESS PROTECTIONS TO A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS WHEN THE TRIAL COURT FAILED TO ARRAIGN PETITIONER IN CIRCUIT COURT, WHICH CREATED A JURISDICTIONAL DEFECT, AND WHICH VOIDED PETITIONER'S CRIMINAL CONVICTION AND SENTENCE.

VI.     PETITIONER WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER BOTH FEDERAL AND STATE CONSTITUTIONS, WHEN THE PROSECUTION FAILED TO INSURE THAT PETITIONER'S DUE PROCESS PROTECTIONS WERE SECURED.

VII.    PETITIONER WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS, WHEN SAID COUNSEL ABANDONED HIS DUTY TO PROTECT PETITIONER'S CONSTITUTIONAL RIGHTS FROM THE MISCONDUCT OF BOTH THE TRIAL COURT AND THE PROSECUTION.

VIII.   PETITIONER RESERVES THE RIGHT TO RAISE THE ISSUE OF CONSTRUCTIVE DENIAL OF APPELLATE COUNSEL SHOULD THE

NEED ARISE -- DEPENDING UPON THE OUTCOME OF THE DECISION OF THE COURT OF APPEALS -- ESPECIALLY WHERE APPELLATE COUNSEL; IN RAISING ITS TWO ISSUES; MAY HAVE GIVEN JURISDICTION TO A COURT THAT DID NOT HAVE IT FROM THE BEGINNING AS ARGUED THROUGHOUT THIS PLEADING;    THUS,    SUBJECTING    PETITIONER    TO UNWARRANTED PREJUDICE.

IX.    PETITIONER WAS DENIED HIS FUNDAMENTAL DUE PROCESS PROTECTIONS TO A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS, WHEN THE TRIAL COURT ARRAIGNED PETITIONER WITHOUT FIRST HAVING ACQUIRED    SUBJECT-MATTER    JURISDICTION    OVER PETITIONER, CREATING A JURISDICTIONAL DEFECT, THAT VOIDS PETITIONER'S CONVICTIONS.

X.    PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR CRIMINAL PROCEEDING AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS, WHEN HIS CONVICTION WAS THE PRODUCT OF FRAUD UPON THE COURT BY AND THROUGH THE ACTIONS OF POLICE PERSONNEL, THE. PROSECUTION AND TRIAL COUNSEL -- ALL UNKNOWN TO THE TRIAL COURT, WHICH MANDATES AUTOMATIC REVERSAL AND PETITIONER'S IMMEDIATE RELEASE FROM CUSTODY.

XI.    PETITIONER WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS, WHEN SAID COUNSEL FAILED TO OBJECT TO THE MISCONDUCT OF THE PROSECUTION AND LAW ENFORCEMENT, THE RESULT OF WHICH WAS COUNSEL'S FAILURE TO PREPARE PETITIONER'S CONSTITUTIONAL RIGHT TO PREPARE A DEFENSE.

XII.    PETITIONER    WAS    DENIED    HIS    FUNDAMENTAL    AND CONSTITUTIONAL RIGHTS GUARANTEED UNDER BOTH TO DUE FEDERAL PROCESS AS AND STATE CONSTITUTIONS, WHEN APPELLATE COUNSEL FAILED TO MASTER THE TRIAL RECORD AND RAISE . . . MERITORIOUS "DEAD BANG WINNER" ISSUES ON PETITIONER'S RIGHT OF APPEAL.

XIII.    PETITIONER WAS DENIED HIS FUNDAMENTAL PROTECTIONS TO A FAIR CRIMINAL PROCEEDING BY AND THROUGH THE CUMULATIVE EFFECT OF ERROR THAT TOOK PLACE AT THE HANDS OF THE TRIAL COURT, THE PROSECUTION, DEFENSE COUNSEL AND APPELLATE COUNSEL.

XIV.    RELIEF FROM JUDGMENT SHOULD BE GRANTED WHERE PETITIONER CAN ESTABLISH "GOOD CAUSE" FOR NOT

> BRINGING HIS ISSUE BEFORE THE COURT PREVIOUSLY, AND "ACTUAL PREJUDICE" DUE TO THE ISSUE OF HIS COMPETENCY AND THE GOVERNMENT'S CONTINUING REFUSAL TO RESOLVE THAT FACT; THUS, RES JUDICATA DOES NOT APPLY BECAUSE OF PETITIONER'S RIGHT TO CONTINUE SEEKING RELIEF TO CORRECT A MANIFEST INJUSTICE.

Grounds I and II are incorporated from Petitioner's brief to the Michigan Court of Appeals that was filed by his appellate attorney (ECF No. 1-2, PageID.34), Ground III is from Petitioner's supplemental appeal brief filed by his appellate attorney (ECF No. 1-7, PageID.156), Grounds IV through VIII are from Petitioner's Standard 4[1] brief on appeal (ECF No. 1-3, PageID.59), and Grounds IX through XIV are from Petitioner's supplemental Standard 4 brief[2] on appeal (ECF No. 1-4, PageID.87, 103, 113, 116, 119, 122).

Respondent has filed an answer to the petition claiming that the grounds for relief are meritless and/or procedurally defaulted.  Upon review, I conclude that there is no merit in Petitioner's habeas challenges.  Accordingly, I recommend that the petition be denied.

## Discussion

I.    Background

Petitioner's conviction rested largely on the testimony of Na'eisha Dudley. According to the Michigan Court of Appeals,

---

[1] Under Michigan Supreme Court Administrative Order No. 2004-6, Standard 4:

> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court.

[2] The issues in Grounds IX through XIV are set forth in an untitled attachment to Petitioner's habeas corpus application  (ECF No. 1-4), which the Court assumes is a copy of Petitioner's supplemental Standard 4 brief.  The Michigan Court of Appeals' decision refers to a supplemental Standard 4 brief, and its analysis of the supplemental brief tracks the issues raised in the foregoing attachment.  *See People v. Walker*, No. 322133, 2016 WL 97898, at *6 (Mich. Ct. App. Jan. 7, 2016).

[Defendant's] convictions arose out of an armed robbery that occurred on October 14, 2013, at 1011 Lavette Street in Benton Harbor, MI. Naʻeisha Dudley, Shabree Batty, and Damarcus Hockett arrived together to meet defendant at this location. The three other individuals and defendant went into the house and began watching TV in the living room.  Naʻeisha stated that defendant was walking back and forth between the living room and a bedroom in which another man was located.

Soon after, defendant entered the living room with a gun and told Hockett and Batty to "get down."  The other man began to go through Naʻeisha's pockets and took her keys, cellular telephone, and a little bag of marijuana.  After the man took these items from Naʻeisha, he pointed the gun at her and said, "you too."  Defendant then stated, "I don't even know why you took this chance . . . I'm going to have fun with you, too."  The other man then went up to Hockett and started taking off Hockett's pants and shoes.  He then took Hockett's cell phone from his pocket.

At this point, Naʻeisha testified that Batty stood up and "rushed defendant," who was still holding the gun in his hand.  A fight ensued. Naʻeisha testified that Hockett and the other man began to fight.  Naʻeisha ran outside, observed some people on a porch across the street, and asked if she could use their phone to call 911 and one of the people gave her their phone.  Kenneth Bell, one of the individuals on the porch, testified that he heard a "great commotion inside the house," which sounded like something was knocked over and glass was broken.

While Naʻeisha waited for police, she observed Hockett run out of the house and down the street without pants or shoes.  She further testified that defendant followed Hockett out of the house and pointed the gun at him.  Bell corroborated both of these statements.

When the police arrived at the home, Naʻeisha, Batty, and Hockett were outside the house.  Officer Harmon observed that Hockett was shoeless, and that Batty and Hockett appeared "excited", "scared", and had a "sense of fear on their faces."  The officers also testified that it looked as though a struggle had occurred inside the house.  Furthermore, there was a hat recovered inside the home that Naʻeisha testified belonged to defendant.  The hat had DNA that matched the defendant's.

At trial, neither Batty nor Hockett testified.  Further, the unidentified man in the home did not testify, and defendant would not reveal his last name.  It was further discovered that defendant on numerous occasions attempted to give money to Naʻeisha.  Defendant testified that it was to pay for the marijuana stolen from her pants pocket during the robbery.  However, Naʻeisha stated that it was likely to convince her not to testify against defendant.

*People v. Walker*, No. 322133, 2016 WL 97898, at *1 (Mich. Ct. App. Jan. 7, 2016).

Petitioner gave a different version of the events in his testimony at trial.  He testified that he met Dudley at a gas station on October 13, 2013, the day before the alleged robbery.  Dudley offered to sell him marijuana, but he was not interested.  They met again later that evening at a bar called "Campus Q."  (Def.'s Br. on App., ECF No. 1-2, PageID.44.)  She was with Batty and Hockett.  He gave her $700 in exchange for some heroin.  Shortly thereafter, he learned that the heroin was "garbage," so he arranged to meet with her again the following day to receive his money back or to receive better quality heroin.  (*Id.*)  According to Petitioner, when Dudley arrived at the house in Benton Harbor the following day, she told him that she would not give his money back, but she would give him marijuana.  Petitioner asserted that Batty started a fight by coming up behind Petitioner and hitting him.  Petitioner denied possessing a gun or taking anything from Dudley or Hockett.  However, the jury apparently found Dudley's testimony to be more credible than Petitioner's.

After Petitioner was convicted and sentenced, he appealed the judgment of conviction and sentence to the Michigan Court of Appeals.  With the assistance of counsel, Petitioner raised two issues in an initial brief and a third in a supplemental brief.  Petitioner himself raised eleven additional issues in his own briefs.  In an unpublished opinion issued on January 7, 2016, the court of appeals denied all challenges raised by Petitioner and his counsel, except for one.  The court determined that the trial court enhanced Petitioner's sentence under offense variable 19 ("OV-19") of the Michigan sentencing guidelines based on facts that were not found by the jury or admitted by Petitioner.  *Walker*, 2016 WL 97898, at *10.  The court remanded the case to the trial court to determine whether it would have imposed the same sentence absent a constraint to apply the guidelines as though they were mandatory, in accordance with *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  *Walker*, 2016 WL 97898, at *10.  Petitioner continued

6

his appeal to the Michigan Supreme Court, which denied leave to appeal on July 26, 2016, because it was not persuaded that the questions presented should be reviewed by that court.  It also denied a motion for reconsideration on November 30, 2016.

After the remand in accordance with *Lockridge*, the trial court in Petitioner's case held that it would have imposed the same sentence even if the guidelines were advisory, and it entered an order reaffirming its original sentence in November 2016.  Petitioner timely filed his habeas corpus petition in September 2017, raising the same issues that he raised on appeal.  In fact, as indicated above, the briefs that Petitioner uses to support his claims in this action appear to be the same briefs that he and his attorney filed with the Michigan Court of Appeals.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

8

2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Analysis

### Ground I – Failure to Investigate

Petitioner claims that he was denied a fair trial because the government failed to "investigate and locate key witnesses," including Batty, Hockett, and other individuals who were inside the house when Petitioner committed the offense.  (Def.'s Br. on App., ECF No. 1-2, PageID.51.)  Petitioner also asserts that the prosecutor made no effort to obtain video evidence from Campus Q to corroborate Petitioner's story that he met with Dudley the night before the robbery.

The Michigan Court of Appeals analyzed this claim as one under *Brady v. Maryland*, 373 U.S. 83 (1963), ostensibly because Petitioner cited *Brady* at the beginning of his argument.  The court of appeals found that *Brady* did not apply because Petitioner did not identify any favorable evidence that was in the prosecutor's possession that was not disclosed to him before trial.  This decision was a reasonable one.  Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  "There are three components of a true Brady violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Petitioner did not identify any exculpatory evidence that was possessed by the State and withheld from the defense.  Indeed, although Petitioner cited *Brady*, the crux of his claim was not that the State withheld favorable

evidence in its possession, but that the prosecutor should have taken more effort to investigate and present favorable evidence.

The court of appeals also rejected Petitioner's failure-to-investigate claim. A prosecutor does not have an affirmative duty to "'seek and find exculpatory evidence' or assist in building or supporting a defendant's case, nor is it required to 'negate every theory consistent with defendant's innocence.'" *Walker*, 2016 WL 97898, at *3 (quoting *People v Coy*, 669 N.W.2d 831, 844 (Mich. Ct. App. 2003)). Petitioner fails to cite any authority indicating that such a duty exists under the United States Constitution. *See Lee v. Renico*, No. 5:05-cv-44, 2007 WL 748464, at *17 (W.D. Mich. Jan. 25, 2007) ("Petitioner does not–and cannot–cite any federal authority to support his contention that a prosecutor is obligated to investigate or develop exculpatory evidence."), adopted as opinion of the court, 2007 WL 756318 (W.D. Mich. Mar. 7, 2007). Such a duty cannot be found in *Brady*. "'*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.'" *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)).

Moreover, *Brady* only applies to evidence that was "known to the prosecution, but unknown to the defense." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). Petitioner was aware of the witnesses and the video evidence, and he had an equal opportunity to obtain them and present them at trial. Thus, Petitioner's claim is meritless.

**Ground II – Ineffective Assistance of Counsel**

Petitioner also claims that counsel was constitutionally ineffective. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair

outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  Even if a court determines that counsel's performance was outside that range, Petitioner is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Moreover, as the Supreme Court *repeatedly* has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Petitioner claims that counsel was ineffective for failing to investigate and discover certain "key witnesses" mentioned in connection with Ground I, above.  (Def.'s Br. on App., PageID.56.)  After describing the *Strickland* standard,[3] the court of appeals rejected this claim because Petitioner's brief failed to provide any "further explanation or analysis supporting his argument."  *Walker*, 2016 WL 97898, at *4.

---

[3] The court of appeals cited *People v. Carbin*, 623 N.W.2d 884 (Mich. 2001).  That opinion lays out the *Strickland* standard.  *Id.* at 889.

Moreover, as to Batty and Hockett, the court of appeals assumed that it was trial strategy not to pursue their testimony because they were victims of the offense. Thus, their testimony was unlikely to be helpful. Petitioner has not demonstrated otherwise. Moreover, to show prejudice in these circumstances, it is not enough for Petitioner to "simply state" that the testimony of an uncalled witness "would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991); *see Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("Speculation cannot suffice to establish the requisite prejudice."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *see also Valenzuela v. United States*, 217 F. App'x 486, 491 (6th Cir. 2007) ("In the absence of any evidence raising a factual dispute, the district court did not abuse its discretion by refusing to hold an evidentiary hearing."). The Court is not required to engage in "unguided speculation into the value of omitted testimony by hypothetical witnesses." *United States v. Holt*, No. 95-5173, 85 F.3d 629, 1996 WL 262466, at *9 (6th Cir. May 15, 1996). But unguided speculation is all that Petitioner offers here.

As to the additional individuals present in the house (identified by Petitioner as "Trey" and "Renee"), Petitioner did not explain how their testimony would have assisted his case. In fact, Petitioner acknowledged that "it is unknown what the testimony of the missing witnesses and evidence would reveal." (*See* Def.'s Br. on App., PageID.54.) In other words, Petitioner essentially admitted that he could not demonstrate prejudice as required by *Strickland*. Thus, the state court's decision rejecting this claim was not contrary to, or an unreasonable application of, clearly established law. Nor was it an unreasonable determination of the facts.

12

**Ground III – Improper Sentencing**

Petitioner argues that his sentence violated his rights under the Sixth Amendment because the sentencing judge relied upon facts that were neither admitted by him nor found by the jury when determining his range of sentence under Michigan's sentencing guidelines. According to Petitioner, the judge found the following: Petitioner qualified for an enhancement under OV-1 because he pointed a firearm at a victim; Petitioner qualified for an enhancement under OV-2 because he possessed or used a pistol; Petitioner qualified for an enhancement under OV-12 because he committed a contemporaneous felonious criminal act that has not and will not result in a separate conviction; and Petitioner qualified for an enhancement under OV-19 because he interfered with, or attempted to interfere with, the administration of justice. (Suppl. Br. on App. re Sentencing, ECF No. 1-7, PageID.158-160.)

The court of appeals held that the jury necessarily found the facts necessary to support the enhancements in OV-1, OV-2, and OV-12, but agreed with Petitioner that the trial court erred when finding facts that were not supported by the jury verdict or admitted by Petitioner, to support an enhancement in OV-19 under Michigan's mandatory guidelines. *See Walker*, 2016 WL 97898, at *9-10. The court of appeals relied on the Michigan Supreme Court's decision in *Lockridge* that judicial factfinding under Michigan's mandatory sentencing guidelines violates the Sixth Amendment.

Petitioner's Sixth Amendment argument is based on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and ending with *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Supreme Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which

13

the maximum penalty could be increased by judicial fact-finding.  The Court held that the state guideline scheme violated Sixth Amendment rights, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *United States v. Booker*, 543 U.S. 220, 232 (2000) (citing *Blakely*, 542 U.S. at 303).

The Supreme Court expanded the *Blakely* reasoning to mandatory minimum sentences in *Alleyne*.  Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines to produce a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. Ct. App. 2013).  In *Lockridge*, the Michigan Supreme Court overruled *Herron* and held that *Alleyne* applied to Michigan's mandatory sentencing guidelines scheme.  *Lockridge*, 870 N.W.2d at 513-14.  The court remedied the problem by making the sentencing guidelines advisory.  *Id.* at 520-21.

In Petitioner's case, the Michigan Court of Appeals held that the jury necessarily found the facts required to support the enhancements in OV-1, OV-2, and OV-12.  Petitioner does not argue or show that this decision is legally erroneous or is based on an unreasonable determination of the facts.  Thus, he has not shown that he is entitled to relief for this aspect of his sentence.

In addition, the court of appeals remanded the matter to the trial court to determine whether the sentence would change if OV-19 was not mandatory.  On remand, the trial court held that the sentence would not change.  This is the same remedy contemplated by *Booker* with respect

to the federal sentencing guidelines.  Thus, Petitioner's objection to the enhancement under OV-19 is also meritless.

**Ground IV - Trial Judge Presided over Preliminary Examination and Trial**

Next, Petitioner claims that he was denied due process because the same judge presided over his preliminary examination and trial.  Petitioner also claims that this was a violation of state law.  Petitioner cites *People v. Ramsey*, 187 N.W.2d 887 (Mich. 1971) and *In re Murchison*, 349 U.S. 133 (1955).

In *Ramsey*, the trial judge, acting as the trier of fact, looked at preliminary examination testimony before finding the defendant guilty of an offense.  *Ramsey*, 187 N.W.2d at 888.  The Michigan Supreme Court held that this violated a Michigan statute and the constitutional right of a defendant to confront and cross-examine witnesses.  *Id.*  The court also cited a court rule that "Whenever any Judge shall have acted as Examining Magistrate in any case he shall not be assigned to the trial of that case, except with the expressed consent of counsel for all parties entered upon the record in open Court."  *Id.*  Seizing on the latter rule, Petitioner contends that he did not consent to having the same judge conduct the preliminary examination and conduct the trial; thus, he contends that his trial was improper.

The court of appeals properly held that *Ramsey* does not apply because the judge in Petitioner's case did not act as the trier of fact.  In other words, the individuals who decided Petitioner's guilt (the jury) did not rely on evidence from his preliminary examination proceeding.  Consequently, having the same judge for both the preliminary examination and the trial had no impact on his right to confront and cross-examine witnesses.

The Michigan Court of Appeals did not discuss *Murchison*, but that case is inapplicable for similar reasons.  In *Murchison*, a judge, acting as the grand jury, charged one person with perjury and another with contempt of court.  The same judge then tried and convicted

both of them. *Murchison*, 349 U.S. at 134-35. The Supreme Court held that this was improper, in part, because the judge's conviction relied upon evidence that he recalled from closed grand jury proceedings that was not part of the record and could not be refuted by other witnesses. *Id.* at 138. In effect, the judge acted as both a witness and a fact-finder, and this prevented the individuals charged from cross-examining a key witness. *Id.* at 139. The Court also expressed concern that the judge would not be "wholly disinterested in the conviction or acquittal of the accused" because the judge, in his role as a single grand juror, was effectively the prosecutor, and was "even more a part of the accusatory process than an ordinary lay grand juror." *Id.* at 137.

Seizing upon the Supreme Court's observation about the potential bias of a single grand juror/judge toward the conviction of an accused, Petitioner apparently contends that the trial judge's participation in the preliminary examination in his case made the judge biased against Petitioner. However, *Murchison* is distinguishable because the trial judge in Petitioner's case played no role in charging Petitioner with a crime; thus, he was not interested in Petitioner's conviction in the same way that a prosecutor would be. Nor did the trial judge determine Petitioner's guilt. Thus, he could not have relied upon evidence outside the record to convict Petitioner, which would have denied Petitioner the opportunity to confront and cross-examine a witness.

Petitioner cites no federal authority, let alone authority from the United States Supreme Court, holding that a judge cannot preside over both the preliminary examination and the jury trial of the same defendant. Consequently, Petitioner has not established that the state court's decision rejecting his claim is contrary to, or an unreasonable application of, clearly-established law.

The court of appeals also held that the judge did not violate state law.  Petitioner contends that the trial judge, a circuit court judge, exceeded his authority under state law by conducting the preliminary examination because only district courts have jurisdiction to conduct such examinations according to Mich. Comp. Laws § 600.8311(d).  However, the court of appeals noted that trial courts can adopt plans of concurrent jurisdiction under Mich. Comp. Laws § 600.401, which the Berrien County had done before Petitioner's criminal proceedings.  Consequently, judges in Berrien County could "act in all proceedings in the circuit court, district court, and probate court."  *Walker*, 2016 WL 97898, at *5.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 68.  Thus, Petitioner's claim that the judge violated state law is not cognizable in this action.

Furthermore, "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Richey*, 546 U.S. at 76).  Thus, the court of appeals' determination that the trial court did not violate state law is binding on this Court.

**Ground V - Failure to Arraign Petitioner in Circuit Court**

Petitioner asserts that he was denied a fair trial and that the trial court lacked jurisdiction over him because it did not arraign him in circuit court as required by Mich. Comp. Laws § 6.113.  The court of appeals, however, determined that Petitioner waived his right to

17

arraignment in circuit court when he signed a document indicating that he waived arraignment, pleaded not guilty to the charges, and demanded a jury trial in circuit court. *Walker*, 2016 WL 97898, at *5. In addition, the court of appeals noted that Berrien County had eliminated the requirement for arraignment in circuit court by a local order. The prosecutor complied with the local rule by serving a copy of the felony information on Petitioner's counsel and filing a proof of service with the court. *Id.*

Petitioner does not challenge the state court's determination of what occurred during his proceedings. To the extent he disagrees with the state court's interpretation of state law, his claim is not cognizable in these proceedings. *See Estelle*, 502 U.S. at 68. Thus, the alleged failure to arraign Petitioner in circuit court does not present a viable basis for relief under § 2254.

**Ground VI - Prosecutor Failed to Ensure Due Process**

In a variation on the claims in Grounds I and IV, Petitioner asserts that the prosecutor failed to ensure that he received adequate due process when it allowed a circuit court judge to conduct the preliminary examination and allowed the trial to proceed when the court lacked jurisdiction over Petitioner. Petitioner asserts that the prosecutor had a duty to ensure that his rights were protected. Petitioner cites no federal authority for this proposition, and the Court is aware of none. Moreover, as indicated above, the court of appeals determined that the circuit court judge had authority to conduct the preliminary examination, and the circuit had jurisdiction. This Court is bound by that determination. Consequently, the Court cannot conclude that the prosecutor engaged in misconduct or that Petitioner failed to receive due process.

**Ground VII - Ineffective Assistance of Counsel**

Petitioner argues that his counsel was ineffective for failing to object to the state court's alleged lack of jurisdiction and to the prosecutor's alleged misconduct raised in Ground I.

As indicated, the court of appeals rejected Petitioner's assertion that the state court lacked jurisdiction.  Petitioner does not argue or show that there is any error in that decision.

In addition, as indicated, the prosecutor did not have a duty to investigate evidence on behalf of Petitioner.  Consequently, Petitioner has not demonstrated that counsel's failure to object was unreasonable or that this failure prejudiced Petitioner.  Counsel is not required to raise frivolous objections.  *See, e.g.*, *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  Thus, Petitioner has not satisfied the two requirements for bringing an ineffective assistance claim under *Strickland*.

## Ground VIII - Ineffective Assistance of Appellate Counsel

Petitioner contends that he was denied the effective assistance of appellate counsel for failing to raise Grounds IV through VII above.  However, Petitioner was able to raise these issues in his own brief, and the court of appeals considered his arguments.  The court of appeals held that Petitioner's arguments were meritless.  *Walker*, 2016 WL 97898, at *6.  Thus, Petitioner has not demonstrated that counsel's conduct was unreasonable or that counsel's alleged failure prejudiced him.

## Ground IX - Jurisdiction: Complaint and Probable Cause

Petitioner argues that the state court lacked jurisdiction, for several reasons:  (1) the criminal complaint and affidavit were not notarized and, thus, they were defective under Michigan law; (2) the criminal complaint was not based on probable cause; (3) the complaint was signed by the assistant prosecutor, not the prosecutor; (4) the complaint did not specify where the crimes occurred; (5) the complaint improperly charged different crimes at different locations; and (6) the magistrate did not return the case to circuit court.

Petitioner's challenge to the state court's jurisdiction is not cognizable in this action.  The determination of whether a state court is vested with jurisdiction under state law over

19

a criminal case is a function of the state courts, not the federal courts.  *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976).  Moreover, the state court here determined that there were no jurisdictional defects.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Richey*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  As indicated above, "'[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf*, 722 F.3d at 746 n.6 (quoting *Richey*, 546 U.S. at 76).  Specifically, with regard to jurisdictional issues, "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

Furthermore, Petitioner's factual challenges to the state court's jurisdiction are directly refuted by the record.  For instance, the court of appeals determined the complaint was, in fact, notarized.  *Walker*, 2016 WL 97898, at *6.  That decision is supported by documents filed by Petitioner by himself.  (*See* Compl. & Aff., ECF No. 1-4, PageID.98.)  The court of appeals also held that the complaint was supported by probable cause.  *Walker*, 2016 WL 97898, at *6.  That decision is amply supported by the facts recited in the criminal complaint.  Petitioner has not demonstrated any error in those findings.

Petitioner also asserts that the government did not follow the requirements of Rule 6.102 of the Michigan Court Rules, which provides that a finding of probable cause to support an arrest warrant may be based on "hearsay evidence and rely on factual allegations in the complaint, affidavits from the complainant or others, the testimony of a sworn witness adequately preserved

to permit review, or any combination of these sources."  Mich. Ct. R. 6.102(B).  Petitioner does not explain how the complaint failed to comply with this rule, and even if he had, he would not be entitled to relief.  This is another issue of state law that is not cognizable in these proceedings. There is no constitutional right to a probable cause determination before trial.  *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *see also Cornelius v. Prelesnik*, No. 1:13-cv-992, 2016 WL 5538045, at *7 (W.D. Mich. Sept. 30, 2016).  Although the Fourth Amendment requires probable cause to support an arrest, the propriety of an arrest is irrelevant to the constitutional validity of any subsequent conviction.  "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."  *United States v. Crews*, 445 U.S. 463, 474 (1980); *see also Gerstein*, 420 U.S. at 119 ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."). Thus, it does not matter what sort of evidence the state court relied upon to find that the complaint was supported by probable cause.

Petitioner further contends that the criminal complaint was defective because it was signed by the assistant prosecutor, not the prosecutor.  He asserts that the prosecutor has no authority to delegate his responsibilities to another individual.  This is another matter of state law; it is not grounds on which this Court can grant habeas relief.  Moreover, the court of appeals noted that an assistant prosecutor "is permitted to 'perform any and all duties pertaining to the office of the prosecuting attorney at such time or times as he may be required to do so by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney . . . .'" *Walker*, 2016 WL 97898, at *7 (quoting Mich. Comp. Laws § 49.42); *accord People v. Jarboe*, 157 N.W.2d 321, 323 (Mich. Ct. App. 1968) ("The statute . . . clearly allows an assistant prosecuting attorney to perform such duties 'as he may be required so to do' pertaining to the

office of the prosecuting attorney."). This Court has no authority to reject the state court's interpretation of state law.

In addition, Petitioner asserts that the complaint was defective because it charged with him committing larcenies against three victims, but did not specify when and where these larcenies occurred. To the contrary, the complaint specifies the location as "1011 Lavette" in Benton Harbor, and the date as "10/14/2013." (ECF No. 1-4, PageID.100.) Moreover, the court of appeals held that the complaint complied with the requirements of court rules because such information is not required. *Walker*, 2016 WL 97898, at *6. This Court is bound by that decision.

Petitioner asserts that, under Michigan case law, the government cannot prosecute a person for different crimes, involving different victims, at different times, under one felony complaint. That may be so, but in this case, the complaint specified three victims at one location, on the same date, involved in the same series of events. None of the case law cited by Petitioner precludes such a prosecution. *See, e.g.*, *People v. Bommarito*, 14 N.W.2d 812, 813 (Mich. 1944) ("There is no question that . . . a person should not be subjected to trial for two separate and distinct offenses at one time. But it is also well settled that the People cannot be required to elect between counts where the offenses committed arose out of the same acts at the same time and the same testimony must be relied upon for conviction."); *People v. Aiken*, 33 N.W. 821, 824 (Mich. 1887) ("[W]hen the several offenses charged . . . spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant cannot be prejudiced in his defense by the joinder[.]"). Moreover, Petitioner cites no federal authority, let alone clearly established law, indicating that the prosecution of a case in these circumstances was improper. Thus, his argument provides no basis for federal habeas relief.

Finally, Petitioner asserts that the trial court lacked jurisdiction because there was not a magistrate's return to circuit court.  Under Michigan law, "[a]ll informations shall be filed in the court having jurisdiction of the offense specified in the information after the proper return is filed by the examining magistrate and by the prosecuting attorney of the county as informant."  Mich. Comp. Laws § 767.40.  The court of appeals determined that the procedure followed in Petitioner's case was proper because the district court signed a bind over document based on the charges in the complaint, the circuit court received the document for filing, and thereafter the prosecutor filed a felony information.  *Walker*, 2016 WL 97898, at *7.  In addition, Petitioner waived any defects in personal jurisdiction by signing a document waiving arraignment and appearing in court for his conviction.  *Id.* at *8.  Petitioner does not identify any error in the court of appeals' analysis.  Moreover, this is an issue of compliance with state law; it is not a proper basis for relief under § 2254.

In summary, none of the foregoing challenges related to the criminal complaint or to the state court's jurisdiction provide Petitioner with an avenue for relief in this action.

**Ground X – Fraud on the Court**

Petitioner contends that the prosecutor committed fraud on the court and denied him a fair trial by requesting two adjournments on the basis that the State needed to conduct DNA testing.  Petitioner claims that the prosecutor already possessed the DNA results when asking for an adjournment.  The state court, however, found no evidence of deception because "there is nothing in the record supporting that [the] DNA analysis was completed before [the adjournment] hearings[.]"  *Walker*, 2016 WL 97898, at *8.  That determination was perfectly reasonable.  Petitioner relies upon testimony by the DNA expert that she removed a DNA sample from "the [evidence] vault to do the actual analysis" on November 26, 2013.  (Trial Tr. I at 209, ECF No. 18-7.)  Petitioner notes that the prosecutor asked for adjournments after that date, but the state

23

court reasonably determined that the foregoing testimony merely suggests that the expert *started* her testing on November 26, 2013, not that she completed it on that date.

More importantly, Petitioner does not indicate how the adjournments impacted his trial or his constitutional rights.  "The decision whether to grant a motion for continuance is within the discretion of the trial judge."  *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964)); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (noting that trial courts have broad discretion in deciding whether to grant a continuance).  "Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process."  *Id.* (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).  Petitioner has not made that showing.  Thus, his claim for relief based on the adjournments is both factually and legally unsupported.

Petitioner also asserts that the prosecutor committed fraud on the trial court and violated the "rule of completeness" in Rule 106 of the Michigan Rules of Evidence by submitting only a portion of a recording of a phone call that Petitioner made from jail.  Under Rule 106, "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  Mich. R. Evid. 106. However, this rule "does not automatically permit an adverse party to introduce into evidence the rest of a document [or recording] once the other party mentions a portion of it."  *People v. Herndon*, 633 N.W.2d 376, 402 n.85 (Mich. Ct. App. 2001).  Instead, it limits the additional evidence to that which "ought in fairness to be considered contemporaneously with it."  *Id.*  The rule is "designed to prevent unfairness which may result if a statement is taken out of context."  *See Moody v. Pulte*

*Homes, Inc.*, 337 N.W.2d 283, 288 (Mich. Ct. App. 1983), *rev'd on other grounds* 423 Mich. 150 (1985).

The court of appeals rejected Petitioner's evidentiary claim because Petitioner failed to show why the remainder of the phone call should have been offered into evidence. *Walker*, 2016 WL 97898, at *8. He merely asserted, without elaboration, that the jury was "left to decide Petitioner's case on a partial or speculative presentation of the facts[.]"    (*See* Suppl. Standard 4 Br. on Appeal, ECF No. 1-4, PageID.108.)

An inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the

Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

The Court discerns no error in the state court's decision, let alone an error that is contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court.  Petitioner fails to cite any Supreme Court case law in support of his position. Furthermore, as Petitioner himself points out, the state's witness testified that the recording presented to the jury was only a portion of Petitioner's call.  (Trial Tr. I at 288.)   Consequently, the jury was aware that what they heard was not the whole phone call; there was no deception by the prosecutor.

Petitioner also contends that the prosecutor "reneged" on a "deal" to grant Petitioner immunity for the charges against him if he cooperated with law enforcement.  (ECF No. 1-4, PageID.111.)  In support of this claim, Petitioner cites a transcript from a pretrial hearing on February 24, 2014, in which Petitioner told the court that he had been offered immunity.  (*Id.*; *see* 2/24/2014 Hr'g Tr., ECF No. 18-6.)  Reviewing that transcript, the state court determined that the prosecutor had offered Defendant immunity for *additional* charges that might result from Petitioner's disclosures to law enforcement; the prosecutor did not offer Defendant immunity for the charges that he already faced, and for which he was later convicted.  *Walker*, 2016 WL 97898, at *8.

The transcript of the February 24, 2014 hearing does not shed much light on the nature of the promises that Petitioner received in connection with his cooperation with law enforcement.  At this hearing, Petitioner asserted that he was offered immunity for anything he discussed with the police, including the charges against him in his criminal case.  In response, the prosecutor counter-asserted that offer covered only new charges that could arise as a result of

Petitioner's disclosures to the police, "unless there was murder, violence or guns involved." (*See* 2/24/2014 Hr'g Tr. 6-12, ECF No. 18-6.) The state court apparently sided with the prosecutor's representations. The state court's factual determination was not unreasonable; Petitioner offers nothing to undermine it. Thus, Petitioner is not entitled to relief for this claim.

In summary, Petitioner's claims in Ground X are meritless.

## Ground XI – Ineffective Assistance of Counsel

Petitioner argues that his counsel provided ineffective assistance by failing to raise the issues described in Ground IX and X, i.e., the trial court's lack of jurisdiction and the prosecutor's alleged misconduct and fraud on the court. As explained in those sections, the court of appeals rejected all of Petitioner's challenges to the state court's jurisdiction and to the alleged defects in the criminal complaint. It also rejected his claims of prosecutorial misconduct and fraud on the court. Consequently, when examining Petitioner's ineffective-assistance claim, the court of appeals held that "defense counsel was not ineffective and did not abandon his duty as counsel because counsel is not required to take a meritless position or make a futile objection." *Walker*, 2016 WL 97898, at \*9. That decision was a reasonable one, and it is consistent with the *Strickland* standard.

## Ground XII – Ineffective Assistance of Appellate Counsel

Petitioner contends that he was deprived of the effective assistance of appellate counsel because his appellate attorney did not raise Grounds IX, X, and XI; instead, Petitioner raised them in a Standard 4 brief.

An appellant has no constitutional right to have his attorney raise every non-frivolous issue on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463

U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.  Petitioner cannot make that showing.  The state court determined that the issues he raised were meritless.  Thus, it was not unreasonable for appellate counsel not to raise them. *Walker*, 2016 WL 97898, at *6.

Moreover, Petitioner was not prejudiced because he was able to present the issues to the appellate court in his own brief, and the court considered them.

## Ground XIII – Cumulative Error

Petitioner contends that he was deprived of a fair trial due the "cumulative effects" of errors that occurred at trial, including errors by his counsel.  The state court did not expressly discuss this claim, but it did not need to do so because Petitioner has not identified any trial-related errors.  In other words, this claim is meritless because there are no errors to cumulate.

## Ground XIV – Relief from Judgment

Finally, Petitioner contends that he is not barred from relief under Rule 6.508(D)(3)(a) of the Michigan Court Rules, which is one of the rules that pertains to a motion for relief from judgment.  As the Michigan Court of Appeals observed, Petitioner's argument concerns "post-appellate relief."  *Walker*, 2016 WL 97898, at *6.  It was not relevant to Petitioner's appeal. *Id.*  Likewise, it is not relevant to Petitioner's federal habeas petition.  The Michigan Court Rules do not govern a petition for relief in federal court.  Moreover, Petitioner never filed a motion for

28

relief from judgment in state court, so the rules for such a motion have no bearing on his right to relief in this Court.

## Conclusion

For all the foregoing reasons, the grounds for relief set forth in Petitioner's habeas petition should be denied it is meritless.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated: April 19, 2019                           /s/ Ellen S. Carmody
                                               ELLEN S. CARMODY
                                               U.S. Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).